**RIGGLE, Plaintiff-Appellant, v. RIGGLE, etc. et, Defendants-Appellees.**

Ohio Appeals, Tenth District, Franklin County.

No. 5438.  Decided May 6, 1957.

John F. Seidel, Columbus, for plaintiff-appellant.
Gale R. King, Columbus, for defendants-appellees.

(HORNBECK, J, of the Second District, sitting by designation in the Tenth District.)

**OPINION**

By HORNBECK, J.

This is an appeal on questions of law from a judgment against the

plaintiff and in favor of defendant in the amount of $4,176.00, which sum was determined to be the arrearage in a support money order made in a divorce proceeding wherein the decree was granted to defendant, from December 20, 1939, to 1953, inclusive.

When we refer to the defendant, we at all times refer to Cleo Riggle, now Cleo Pike.

Three errors are assigned:

1. The overruling of plaintiff's demurrer of date October 13, 1955.

2. Granting an injunction for cause that had ended for which there was no statutory enactment enabling a judge to act in this cause by way of injunction.

3. That the finding and judgment are against the weight of the evidence not supported thereby, and for other irregularities occurring at the trial and the abuse of discretion by which the plaintiff was prevented from having a fair trial.

Without comment, we hold against appellant on the second assignment of error.

Upon the third assignment of error, namely, that the judgment is against the manifest weight of the evidence, we find that this relates particularly to the amount of the judgment which is representative of the arrearage on the court order.

It was the claim of the defendant that the plaintiff had made no payments whatever referable to the court order requiring the plaintiff to pay the sum of $6.00 per week which was made originally on January 22, 1938, except those admitted by her.

Plaintiff contended that by an agreement with defendant subsequent to the support order and in lieu thereof, he was to provide clothing and necessaries for their child which, throughout the succeeding years, he did. He offered proof of articles purchased and some money advanced. Upon this issue of fact the trial judge held with the defendant. We can not say that he erred in so doing.

Further facts essential to an appreciation of the first assignment of error, viz., the overruling of the demurrer, are that the plaintiff sued defendant for divorce on July 20, 1937. On July 23, 1937, defendant answered and by cross-petition prayed for a decree of divorce. Plaintiff charged gross neglect of duty and defendant charged gross neglect of duty and extreme cruelty and also denied the allegations of the petition. The matter pended without further pleadings, although the parties were in court on other matters several times until May 23, 1939, when another answer and cross-petition was filed. On August 9, 1939, plaintiff withdrew his petition and on that date, a divorce was granted to the defendant and a separation agreement between the parties was incorporated in the decree.

The motion of defendant was for an order fixing and determining the arrearage for child support due from plaintiff to the defendant, Cleo Riggle Pike.

To the motion of defendant, plaintiff filed the following demurrer:

"Now comes the plaintiff, Malcolm Riggle, and demurs to any further proceedings herein for the reason that the proceedings in this cause were based upon a separation agreement, is a collusive agreement, and voids all proceedings had in this cause."

This demurrer was filed August 12, 1952, overruled, and the entry journalizing the ruling was filed in 1955.

No doubt the purpose sought to be accomplished by this demurrer was to invalidate that part of the separation agreement relating to the support of the minor and the amount thereof.

The separation agreement recited the differences between the parties, the actions that had been brought on behalf of both of them, their desire to settle and adjust their differences which relate to the support of the minor, the amount of the former support order, and the modification thereof. Then, it specifically provided for plaintiff to pay defendant's attorney a sum of money which was to be in full for all money payments delinquent under the original support order of $10.00 per week, in full of all claims against the plaintiff by the defendant; that he would continue to pay the sum of $6.00 per week for the support of the minor child until it was established that he was able to pay $10.00, at which time he would pay that sum. Rights of visitation were provided for the father with the child although the custody was to be granted to the mother. The contract then provided:

"This agreement shall be in full of all rights of the parties, one against the other, and in the event that either party dies, his or her estate shall be administered as if the said deceased party had survived the surviving party."

Then follows the paragraph upon which it is contended the divorce proceedings were collusive, that the decree should be set aside and that the support money order avoided.

"It is agreed between the parties that said Malcolm Riggle shall, upon the signing of this agreement, immediately withdraw his petition and make no defense against said Cleo Riggle's cross-petition. If said Cleo Riggle shall not pursue her action within a month from the date of this agreement, said agreement shall act as an entry of dismissal of said case above stated and said Malcolm Riggle shall be free to file a petition asking for divorce, and further be free to pursue said petition to a divorce decree, provided always, that any decree affecting the parties shall incorporate therein, subject to the approval of the court, the terms and conditions of this agreement."

The agreement further provided for separation and that the parties live apart.

It might be observed that the motion for a new trial which followed the hearing on the claim of defendant of the amount of arrearage sets forth no ground which questions the validity of the action of the court in overruling the demurrer.

The trial judge properly, we believe, treated the demurrer as an attack on the divorce decree and as the equivalent of a motion to vacate the divorce decree, and either invoking relief under the statute or upon the inherent power of the court. This action would have been necessary before the court could abrogate the support order. The separation agreement as such, might be a binding contract on the parties especially as to that part which provided for the amount of support money for the child, but there was no place for it in the divorce proceedings unless and until a decree was properly granted to the defendant.

The trial judge, in a written opinion, in passing on the demurrer, held that that part of the agreement which we have quoted was collusive; cites and discusses the late case of **Jelm v. Jelm, 155 Oh St 226;** and then holds that the legal maxim that, "When one of two innocent parties must suffer, the one who made it possible shall suffer and that the plaintiff is chargeable with laches," held that the demurrer should be overruled. He also called attention to the fact that since the divorce decree, both the plaintiff and the defendant had remarried.

Plaintiff cites and relies upon **Stoutenburg v. Lybrand, 13 Oh St 228.** In that case, the promissory note upon which suit was instituted by one who claimed to be an innocent purchaser for value before due, and to which a demurrer was sustained, the court held that the note given in connection with a divorce decree secured by collusion of which the holder had knowledge, was given without any consideration whatever. Further, that the plaintiff was not an innocent purchaser; that he had full knowledge of the want of consideration for the note and that it was not transferred to the plaintiff before maturity.

This case was decided on a judgment entered in the trial court after the sustaining of a demurrer to the answer of defendant to a suit on the note. The first paragraph of the syllabus must be read in the light of the answer in which defendant denied any agreement on his part to the collusion.

The case was decided in 1861 and the first syllabus has never been since cited nor allusion made to it by the Supreme Court.

If there were no other reasons to support the judgment here under review, the first paragraph of the syllabus of the Stoutenburg case would cast some doubt upon the order, if it be conceded, as the trial judge did, that the separation agreement was collusive.

In a note in 2 A. L. R. 708, it is said that:

"According to the weight of authority, agreements relating to alimony or the adjustment of property rights, which do not directly induce the procurement of a divorce, do not constitute such collusion as will bar a decree. Although such agreements may contemplate the possibility of a divorce, and depend for effectiveness on its being obtained, they will not bar a decree, provided they are made in good faith, with no undue influence or imposition by one party on the other, and are fair and equitable. In other words, there seems to be no presumption that a contract for the settlement of property rights, made in contemplation of a possible divorce, is necessarily collusive, but the court will look to all the facts and circumstances of the case to determine whether the contract has that effect in each particular case."

Cases from eight states are cited to support the text.

In this case, the part of the agreement which is sought to be avoided is that which required the father to pay support money for his child. This was an obligation that the law imposed upon him. The amount which he agreed to pay was modest in the extreme. In all probability, had he met the full obligation to provide necessaries for his child the sum expended would have been far in excess of that which he agreed to pay. Had a stranger provided such necessaries, he could have recovered from plaintiff the amount so advanced. How, then, can it be urged

that this part of the agreement afforded a consideration for the collusive terms of the separation agreement?

There is no doubt that a court should and would deny a decree to a party to a divorce action if collusion appeared before adjudication. This is but a matter of sound public policy. However, public policy should also enter a case where circumstances which have developed long since the granting of the decree, clearly indicate that it would be against such policy to declare the decree void. Here, for instance, if such action were taken, both parties and three spouses, who are innocent, would be branded as bigamists. The father, who is equally chargeable with the mother in the collusion, if any, would be permitted to benefit by reason of his own fraudulent practice. Thus, disregarding the maxim of equity that he who seeks equity must do equity and that he must come into court with clean hands, all that he would accomplish would be to compel the defendant to resort to another action on the separation agreement.

We do not cite nor discuss many of the cases cited by the parties because most of them are from states other than Ohio where there is divergence in adjudication, whether a divorce decree secured by collusion is void or voidable. There is very little case law in Ohio on the question. We are in accord with the epitome of the annotator of the cited adjudications from fifteen states in 109 A. L. R. 849-b:

"Generally, in the absence of considerations of equity, or public policy, a divorce decree will not be vacated at the instance of either party guilty of collusion."

In Singer v. Singer, 41 Barb. (N. Y.) 139, in refusing to set aside a decree of divorce collusively obtained, the court said:

"If the motion was properly made, and in due season, the court would order any judgment of divorce obtained by collusion or fraud to be set aside; not from any regard to the parties concerned, but from motive of public policy. In such case, it should be made apparent that the party so moving was acting from good motives, and not for any expected personal advantage. But where the judgment of divorce has been acquiesced in for the period of several years, and the plaintiff has again been married, some better reason than the mere gratification of a personal feeling, or the desire to obtain a further sum of money from the plaintiff, should be made clearly to appear before the court would be warranted in granting such an application. As I have already said, the ground on which such an order could be made would be one of public policy, but no such reason should suffice where, after the acquiescence of both the parties and the judgment for three years, an innocent person has become involved by marriage, and the opening of the judgment would involve her in distress, and perhaps disgrace."

During all the years this case has pended and in the various proceedings which have transpired, the plaintiff has not until this very last motion even suggested the invalidity of the decree because of collusion. The Jelm case, supra, which overruled Parish v. Parish, 9 Oh St 534, and had the effect of overruling the holdings in many other cases in other courts must be read in the light of the facts there developed. The adjudication there is but a holding that, either under statute or

upon the inherent power of the court, the Common Pleas Court has a right to vacate its own decree of divorce, after the term at which it was rendered, for fraud practiced by the successful party in obtaining the judgment. This case is not authority to the effect that the court is required to vacate a decree of divorce, either under the statute or upon its inherent power where collusion appears, without respect to circumstances and that the court has no discretion in the matter.

We have thus far discussed this case upon the assumption that the separation agreement is collusive, as held by the trial court and assumed by counsel on this appeal. But there are two other valid reasons, in our opinion, either of which would preclude this court from reversing the order to which the appeal is directed.

The first is that the appeal in this case from the judgment on the demurrer sought to be reviewed is not timely.

The demurrer must be considered as invoking the action of the trial judge to vacate the divorce decree either under the statute or by its inherent power. The court refused to grant that relief by overruling the demurrer, of date October 13, 1955. The notice of appeal was filed on January 6, 1956. The refusal to vacate the decree was a final order. Cox v. Cox, 104 Oh St 611, which is reviewable. The notice of appeal was not filed within the statutory period.

The second reason supporting the order appealed from is that the separation agreement having been made a part of the formal decree in the divorce action between the parties, the question of the collusive character was passed upon and determined by Judge King. Manifestly, he had before him all that was before the judge on the demurrer in this case and probably more. By his act in ordering the separation agreement to be made a part of the decree, he adjudicated the question of its collusive effect. Even if he were incorrect in this conclusion, it was a binding judgment which has not heretofore been challenged and certainly cannot be adjudicated in this proceeding.

However, the more probable reason supporting the action of Judge King is, that upon the development at the trial of the divorce case, he was satisfied that the language of the separation agreement which upon its face seems collusive, did not in fact so operate. It is common knowledge that divorces are not granted without a development of the facts nor without proof justifying a decree to the aggrieved party, §3105.11 R. C. In any event, the effect of the separation agreement was adjudicated and by formal order it was made a part of the decree.

Judge Williams, in the opinion in Tucker v. Tucker, 143 Oh St 660, after setting out certain statutory safeguards to prevent collusion in divorce cases, says:

"One of the aims of those protective enactments is the prevention of collusion between the parties. The court will always scan waiver of process, entry of appearance, withdrawal of answer, consent to a trial without contest and like steps in determining whether in the light of all the circumstances collusion exists between the parties and will dismiss the action when collusive conduct is shown; * * *."

The judgment will be affirmed.

PETREE, PJ, BRYANT, J, concur.